**E-Filed 3/1/10**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JOHN CAMPIGLIA,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAXON MORTGAGE SERVICES, INC., a Texas corporation doing business in California as C1917894; PAUL FINANCIAL, LLC; and DOES 1 -10,<br>　　　　　Defendants. | **Case Number C 09-01893 JF**<br><br>**ORDER[1] GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[re: docket no. 27] |

Defendant Saxon Mortgage Services, Inc. ("Saxon") moves to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The Court has considered the moving and responding papers and the oral argument of counsel presented at the hearing on February 26, 2010. For the reasons discussed below, the motion will be granted in part and denied in part.

## I. BACKGROUND

On October 19, 2005, Plaintiff obtained a home mortgage loan from Defendant Paul Financial, LLC ("Paul Financial") secured by the real property located at 4330 Fairway Drive in

---

[1] This disposition is not designated for publication in the official reporter.

Case No. C09-1893
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
(JFLC3)

Soquel, California. (Am. Compl. ¶ 6, Ex. A.) At some point thereafter, pursuant to the loan agreement, the loan was transferred to Saxon, a mortgage loan servicer. (*Id.* ¶¶ 7-8.) On March 18, 2009, Plaintiff initiated this action in the Santa Cruz Superior Court. On April 30, 2009, Saxon removed the action to this Court. On May 29, 2009, Saxon moved to dismiss the complaint, but withdrew the motion pursuant to a stipulation by the parties that Plaintiff would file an amended complaint addressing the issues raised in Saxon's motion.

On August 7, 2009, Plaintiff filed the operative Amended Complaint ("AC"), which alleges, among other things, that Saxon violated the Real Estate and Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Plaintiff alleges that Saxon failed to respond properly to two qualified written requests ("QWRs") for correction of account settings as required by RESPA, provided erroneous information to consumer reporting agencies, and "engaged in a pattern or practice of non-compliance with the requirements of the mortgage service provisions of RESPA." (AC ¶¶ 21-24.) Plaintiff also alleges that Saxon violated the FDCPA by: (1) "using unfair and unconscionable means to collect the debt owed by the Plaintiff"; (2) "misrepresenting the character, amount and legal status of the Plaintiff's debt"; (3) "threatening to and [] placing Plaintiff in a Full Payment requirement when such cannot be legally taken under the Loan Agreement, and by threatening to take other action prohibited by law"; and (4) "failing to accurately and fully state in communications to the Plaintiff 'the amount of the debt.'" (AC ¶¶ 28-31.)

Plaintiff seeks declaratory relief and remedies for Saxon's alleged violations of RESPA and the FDCPA. Saxon moves to dismiss both claims against it.[2]

//
//

---

[2] The Court granted Plaintiff's request for permission to file late opposition to the instant motion and allowed Saxon additional time to file its reply. Plaintiff filed his opposition on February 11, 2010, but Saxon did not file a reply.

2

## II. DISCUSSION

### A. Legal Standard

Dismissal under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient Facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). At the same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of ACt contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1590 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). In addition, a "court may disregard allegations in the complaint if contradicted by Facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp.715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

//

//

3

**B.     RESPA Claim**

Under RESPA, loan servicers such as Saxon

> ha[ve] a duty to respond to a borrower's inquiry or "qualified written request." 12 U.S.C. § 2605(e). A qualified written request is a written correspondence that enables the servicer to identify the name and account of the borrower. 12 U.S.C. § 2605(e)(1). It also either includes a statement describing why the borrower believes that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. *Id.* The loan servicer is required to respond by making appropriate corrections to the borrower's account, if necessary and, after conducting an investigation, providing the borrower with a written clarification or explanation. 12 U.S.C. § 2605(e)(2). written clarification or explanation. 12 U.S.C. § 2605(e)(2).

*Keen v. Amer. Home Mortgage Servicing, Inc.*, 664 F. Supp. 2d 1086 (E.D. Cal. 2009). Plaintiff alleges that he sent one QWR to Saxon on December 5, 2008, and sent another on January 12, 2009, "specif[ying] his reasons for belief that the account had not reached the 110 percent of principal and that the Full Payment was not required under the Loan Agreement." (AC ¶ 19; *see also* AC Exs. B, C.) Plaintiff alleges that Saxon violated RESPA by failing to correct all of the errors identified in the QWRs.

Saxon first argues that the letters sent by Plaintiff are not QWRs as defined by RESPA because they were not delivered within a year after Saxon began servicing Plaintiff's loan. It relies upon 24 C.F.R. § 3500.21(e)(2)(ii), which states that "[a] written request does not constitute a qualified written request if it is delivered to a servicer more than 1 year after either the date of transfer of servicing or the date that the mortgage servicing loan amount was paid in full, whichever date is applicable." Saxon asserts that Plaintiff's letters do not constitute QWRs because it began servicing Plaintiff's loan on November 1, 2007, more than a year before either of the letters was sent to Saxon. (*See* AC Ex. C., Def.'s Request for Judicial Notice ("RJN") Ex. D.)

Plaintiff contends that Saxon misinterprets the one-year limitation in 24 C.F.R. § 3500.21(e)(2)(ii). Citing both the language of that subsection and the language defining the "qualified written request" in subsection (e)(2)(i), Plaintiff asserts that "[i]t appears obvious that the intent of this section is to preclude 'qualified Written Requests' [sic] from being sent to a servicer more than a year after the servicing has been transferred from–not to–the servicer."

4

(Pl.'s Opp. 8.) Plaintiff argues that "it is reasonable to not require compliance with a qualified written request [when] the loan servicing questions could not reasonably be answered by one not servicing a loan for a year or after a file has closed due to loan payoff." (*Id.*)

Though neither party has cited relevant case law, Plaintiff's interpretation of the statute is reasonable. Saxon's interpretation would leave a plaintiff with no RESPA remedy as long as a servicer's failure to comply with 12 U.S.C. § 2605(e) occurred more than one year after a servicer assumed responsibility for a loan. Given many loans have payment periods of thirty or forty years, this could not have been what Congress intended.

Saxon contends alternatively that even if the letters are QWRs, it has complied with its obligations under 12 U.S.C. § 2605(e):

> Saxon responded to Plaintiff's December 5, 2008 letter on December 24, 2008. (RJN, Ex. D.) Saxon informed Plaintiff that it had corrected an error in the calculation of interest under the adjustable rate feature of the Subject Loan. (Id.) Saxon credited the portion of payments erroneously calculated as interest to the principal balance (RJN, Ex. E.) Further, Saxon credited late charges incurred while the account was in error. (Id.) This information was communicated to Plaintiff on numerous occasions: August 5, 2008, December 24, 2008, and February 19, 2009. (RJN, Ex. D-F.) Saxon also notified the credit reporting agencies of the error and requested that they remove the default from Plaintiff's credit profile. (Id.) Finally, each correspondence from Saxon provided a toll-free telephone number to its Customer Service Department.

(Def.'s Motion to Dismiss ("MTD") 6.)

The Court properly may consider documents that are referenced in the complaint. *See In re Stac Elcs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (noting that complete copies of documents whose contents are alleged in the complaint may be considered in connection with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)). However, the complaint here does not allege the contents of either of the letters (and accompanying accounting documents) attached as Exhibits D and E to Saxon's Request for Judicial Notice. As Plaintiff correctly argues, under the circumstances neither the existence or contents of the letters is a proper matter for judicial notice pursuant to Fed. R. Evid. 201(b). *Compare* RJN Exs. E &F (Saxon's purported responses to Plaintiffs' QWR with no evidence that the letters were sent by certified mail or any other proof of delivery), *with* Fed. R. Evid. 201(b) ("A judicially noticed ACt must be one not subject to

5

reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.")

Finally, Saxon argues that Plaintiff has alleged no damages from any alleged RESPA violation. Saxon contends that Plaintiff was in noncurable default based on his unauthorized sale of the property subject to the loan. Saxon requests judicial notice of a grant deed recorded by the County of Santa Cruz on January 3, 2008, recording the transfer of a fifty percent interest in the subject property from Plaintiff to Jason Mattia ("Mattia") on January 2, 2008. According to Saxon, this sale without the lender's consent constituted a noncurable default under Section 11 of the Adjustable Rate Note and Section 18 of the Deed of Trust. (*See* AC Ex. A at 4; Def.'s RJN Ex. A at 11.) Saxon also claims that "Plaintiff sold off the remaining 50% interest he held in the Subject Property on August 22, 2008, as evidenced by a Grant Deed he signed in favor of Donald Maxwell and Shannon Maxwell (collectively, 'Maxwell'). (RJN, Ex. C." (Def.'s MTD 2.)

Plaintiff disputes the claim that he has sold the property. He explains his position in Paragraphs 13 through 15 of the AC:

> 13. On August 22, 2008, in order to preserve and protect the real property that is the security for the Loan Agreement from a lis pendens, court litigation and County action, Plaintiff granted a lot line adjustment to rectify access to his neighbor in exchange for the same amount of land being deeded to his parcel.
> The lot-line adjustment approximately .71 acres of land subject to an easement for ingress and egress to the exchange the neighboring parcel deeded approximately .71 acres to Plaintiff that was not subject to any easement, a portion of which enhanced the property by widening an unusually narrow strip of land on plaintiff's property.
>
> 14. On or about June 8, 2009, a grant deed was recorded from Jason Mattia to plaintiff, to correct an error of a prior mistaken transfer.
>
> 15. Neither the above -reference [sic] erroneous transfer [sic] that has been corrected nor the preservation of the real property set forth above caused any waste or other harm to the security for the Loan Agreement and neither is a material breaches [sic] of the Loan Agreement with Lender.

(AC ¶¶ 13-15.) Plaintiff asserts that "Mr. Mattia was a lender to John Campiglia on a junior lien on the property, and he should have been given a "Deed of Trust" and not a grant deed. Again, Mr. Campaglia has since corrected the error, as has been explained to Saxon's counsel." (Pl.'s

6

Case No. C09-1893
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
(JFLC3)

Opp. 9.)

While there is an obvious factual issue as to the damages element of Plaintiff's RESPA claim, Saxon has not shown that the AC fails to meet the standards set by Rule 8 and the Supreme Court's interpretation of that rule in *Iqbal*. Saxon's arguments are more appropriately asserted in a dispositive motion.

**C.     FDCPA Claim**

"To be held liable for violation of the FDCPA, a defendant must-as a threshold requirement-fall within the Act's definition of 'debt collector.'" *Izenberg v. ETS Services, LLC*, 589 F.Supp.2d 1193, 1198 (C.D. Cal. 2008) (citing *Heintz v. Jenkins,* 514 U.S. 291, 294 (1995)); *see also, e.g.*, *Romine v. Diversified Collection Servs.,* 155 F.3d 1142, 1146 (9th Cir.1998). Saxon contends that the FDCPA claim must be dismissed because mortgage companies like Saxon are not "debt collectors" as defined by the statute. (Def.'s MTD 7.) Plaintiff did not counter this argument in its opposition.

As Plaintiff appeared to concede in his papers and conceded explicitly at oral argument, Saxon is correct. *See, e.g.*, *Vega v. Saxon Mortgage Servs., Inc.*, No. 08-CV-2194- IEG (CAB) 2009 WL 704171, at *3 (S.D. Cal. Mar. 16, 2009) ("Defendant Saxon, the loan servicer, is not a debt collector within the meaning of the law. 'The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include . . . a mortgage servicing company . . .' *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985). Plaintiff therefore cannot successfully allege an FDCPA violation against Saxon.)

Because Plaintiffs cannot cure the defect by amending their pleading, this claim will be dismissed without leave to amend. *Dumas*, 90 F.3d at 393.

### III. ORDER

For the foregoing reasons, the motion to dismiss is GRANTED IN PART AND DENIED IN PART. Saxon shall file ints answer within twenty (20) days of the date of this order.

DATED: March 1, 2010

JEREMY FOGEL
United States District Judge

7

Case No. C09-1893
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
(JFLC3)